UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISON

ASHLEY MERARD,

    Plaintiff,

Case No.: 6:19-cv-01864-PGB-LRH

v.

MAGIC BURGERS, LLC.,
a Foreign Limited Liability Company,

    Defendant.
_____/

## **RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW BY DEFENDANT, MAGIC BURGERS, LLC**

COMES NOW the Defendant, Magic Burgers, LLC (hereinafter "Defendant" or "Magic Burgers"), by and through the undersigned counsel, and the case, having been fully tried, renews its motion for judgment as a matter of law pursuant to Rule 50, Federal Rules of Civil Procedure ("FRCP"), because the punitive damage claims of Plaintiff Ashley Merard cannot, under the controlling law, be maintained. In support of this motion, Magic Burgers states as follows:

### **Procedural History and Introduction**

On May 3 and 4, 2021, a jury trial was conducted regarding Plaintiff's complaints of disability discrimination as proscribed in Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. Section 2000e, *et seq.* (hereinafter "Title VII"). At the close of Plaintiff's case, and again at the close of evidence, Defendant moved

for directed verdict on the limited issue of punitive damages, which was denied. For the reasons set forth below, Plaintiff's claim for punitive damages must be dismissed.

## Legal Analysis

**I. Plaintiff, Ashley Merard, Did Not Provide Sufficient Evidence to Justify Punitive Damages.**

Punitive damages are "an extraordinary remedy" in employment discrimination cases. *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999). To recover punitive damages for employment discrimination, a plaintiff must show that the employer acted with "malice or with reckless indifference to the [plaintiff's] *federally protected rights*." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999) (citations and internal quotations omitted) (emphasis in original). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535. "Not every unlawful discriminatory act will support an award of punitive damages against an employer." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999).

Similarly, "not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference. Nor is there useful litmus for marking the point at which proof of violation sufficient to impose liability becomes sufficient to also support a finding of malice or reckless indifference." *Hardin v.*

*Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir. 2000). "[M]ere negligence as to the civil rights of employees is not enough to justify punitives." *EEOC v. W & O Inc.*, 213 F.3d 600, 611 (11th Cir. 2000). An employee seeking punitive damages "must come forward with substantial evidence that the employer acted with actual malice or reckless indifference." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (emphasis added).

While Defendant believes that Merard does not have sufficient evidence to establish a claim of disability discrimination, even if Plaintiff prevails on her claim, the evidence still fell far short of supporting a finding of maliciousness or reckless indifference on the part of Magic Burgers. First, the actions of Magic Burgers' management fall far short of anything that might be termed "malice or reckless indifference." *See Dudley*, 166 F.3d at 1322-23 (providing examples of conduct warranting punitive damages as "a pattern of discrimination, spite or malevolence, or a blatant disregard for civil obligations"). While not dispositive, the Supreme Court has noted that the egregiousness of the complained of conduct can support an inference of "evil motive" necessary for punitive damages. *Kolstad*, 527 U.S. at 538. Magic Burgers conducted a thorough investigation and took swift action once it was notified of Plaintiff's complaint. There was no evidence that this act was part of a "pattern of discrimination."

## II. Punitive Damages Are Inappropriate Under Title VII Because Any Discriminatory Conduct Was Contrary to Magic Burgers' Good Faith Efforts to Comply with the Law.

Punitive damages are not warranted in every case of malicious or recklessly indifferent conduct by an employee. In *Kolstad,* the Supreme Court stated that liability must be imputed to the employer in order for punitive damages to be assessed against the employer and that "agency principles place limits on vicarious liability for punitive damages." *Id.* at 539. The Court specifically held that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where those decisions are contrary to the employer's good-faith efforts to comply with [§ 1981]." *Id.* at 528.

The *Kolstad* Court accepted the "good faith" defense proposed by Justice Tatel in his dissent in the D.C. Circuit Court of Appeals opinion.

> [W]here a gap exists in the agency relationship between the agent and the entity being held liable . . . the punitive damages inquiry requires the jury to examine the employer's awareness of the law. An employer could thus argue that even though it had been found liable for the discriminatory acts of an employee and ordered to pay compensatory damages to the victim, it should not have to pay punitive damages because it had undertaken good-faith efforts to comply with Title VII... thereby demonstrating that it never acted in reckless disregard of federally protected rights.

*Kolstad v. American Dental Association,* 139 F.3d 958, 974 (D.C. Cir. 1997) (Tatel, J. dissenting) (emphasis added), *vacated*, 527 U.S. 964 (1998). Thus, the crucial

focus in the "good faith" defense is placed on the knowledge and actions of the employer, not the knowledge of the employee engaging in alleged harassment or making the employment decisions.

The *Kolstad* "good faith" defense has a two-fold purpose: (1) imposition of punitive damages against employers for actions taken by "rogue managers" is precluded; and (2) employers are encouraged to adopt and implement non-discriminatory employment practices. *Deters v. Equifax Credit Information Services*, 202 F.3d 1262, 1271 (10th Cir. 2000). The *Kolstad* Court also observed that failing to allow employers to assert their good faith efforts to prevent discrimination as a defense creates "perverse incentives," for example, anti-discrimination training could simply provide the grounds for a claim of reckless indifference. 527 U.S. at 545.

The application of this principle is exemplified in *Harsco Corp. v. Renner*, 475 F.3d 1179 (7th Cir. 2007), where the Seventh Circuit vacated a jury's $20,000 punitive damages award for violation of Title VII. There, the punitive damages were not warranted under the following circumstances:

> . . . Ms. Renner did not introduce sufficient evidence that the company, as opposed to Harsco Corporation's managerial employees, failed to make good-faith efforts to comply with Title VII. Harsco Corporation submitted substantial evidence showing that (it) established comprehensive policies and training procedures in an effort to comply with Title VII. In response, (Plaintiff) alleges that her supervisors were not properly trained, but the only evidence she provides of that faulty training is the

> fact that her supervisors did not comply with the company's policies and procedures in various respects. If failure of supervisors to comply with company policy were sufficient evidence to prove the lack of a good-faith effort to train, the Kolstad defense would be effectively eliminated.

*Renner*, 475 F.3d at 1189-90.

The same result is required here. Magic Burgers undisputedly had comprehensive rules and training procedures on its anti-discrimination policies. Even if Jim Burris, a Magic Burgers' District Manager, made comments regarding Ashley Merard's trachea tube three (3) days after her termination, this is not sufficient to impose liability on Magic Burgers. Managerial disregard of rules is the exact conduct for which employers are insulated by the *Kolstad* defense. *See Allen*, 475 F.3d at 943; *Renner*, 475 F.3d at 1189-90. The mere fact that, accepting Plaintiff's testimony in the light most favorable to her, a manager may have made statements days after her termination does not impute liability to the employer.

All evidence presented at trial supports the fact that Sonia Rivera, the general manager who allegedly heard Jim Burris' discriminatory statements, never told Magic Burgers' leadership or her supervisors of those statements. It is further undisputed that Ashley Merard never notified Magic Burgers' leadership or her supervisors that she believed she was terminated due to her disability. Both employees were supplied with a company hotline, which was specifically in place to report such conduct. However, neither employee chose to use that hotline.

Instead, Magic Burgers first learned of Ashley Merard allegations over a year later when she filed her EEOC Complaint, and the company's response was to immediately investigate the allegations.

Given Magic Burgers' evidence of its good faith efforts to comply with Title VII, Magic Burgers is not liable for punitive damages for its employee's alleged actions unless Merard presented some evidence that Magic Burgers' higher management ratified or adopted his alleged discriminatory conduct. This inarguably did not occur. Cases interpreting the *Kolstad* defense hold that an employer who is put on direct notice of discrimination by way of complaint from the employee can be held liable for punitive damages if, in the face of this notice, the employer refuses to act or remedy the situation. *See, e.g., Deters*, 202 F.3d at 1267 (rejecting *Kolstad* defense where proper official was notified of discrimination but his responses to complaints "were seriously deficient"); *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001) (rejecting *Kolstad* defense where designated official for discrimination complaints was not only aware that plaintiff was repeatedly being subjected to "nigger" jokes, but also "laughed along" at plaintiff when the jokes were made), cert. denied, 535 U.S. 1018 (2002).

By taking inadequate steps or by refusing to act once it has been properly placed on notice of the alleged discrimination, an employer adopts the discriminatory act and is therefore no longer "personally innocent" as contemplated

by the Supreme Court. *Kolstad*, 527 U.S. at 544. By contrast, an employer who is not notified of the alleged discrimination and therefore never given opportunity to redress the situation is entitled to prevail on its *Kolstad* defense as a matter of law. *See, e.g., Cooke v. Stefani Mgmt. Servs*., 250 F.3d 564, 569-70 (7th Cir. 2001) (striking punitive damage portion of award because it was undisputed plaintiff never notified employer of alleged discrimination and therefore malice could not be attributed to the employer); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1226 (S.D. Fla. 2002) (granting employer's Rule 50 motion as to punitive damages because employer instituted non-discrimination policy and immediately investigated complaint by plaintiff). Here, it is undisputed that Magic Burgers acted swiftly in responding to Merard's complaint. Because Magic Burgers acted promptly in response to Merard's complaint, punitive damages are inappropriate.

### III. Punitive Damages Are Inappropriate Because Sonia Rivera Did Not Hold a Sufficiently High Position in Magic Burgers' Corporate Hierarchy.

Although the Supreme Court has not defined "managerial capacity," it explained that "determining whether an employee meets this description requires a fact-intensive inquiry" in which the court "should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished." *Kolstad*, 527 U.S. at 543. The employee "need not be the employer's top management, officers, or directors, to be

8

acting in a managerial capacity," although the employee must be "important." Id. (quotations, citations omitted). As a General Manager of a single restaurant, Sonia Rivera was not sufficiently high up the corporate hierarchy to subject Magic Burgers to liability for punitive damages. General Managers are restaurant specific employees who do not have the authority to amend, alter, or otherwise ignore the larger company's policies and procedures.

The facts of Clara Robertson's claims in *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999), show clearly that the punitive damages award based on the actions of Hatley was properly vacated. Robertson was awarded $250,000 in punitive damages by a jury based upon a promotion denied on the basis of race by the Wal-Mart Store Manager at the store where she worked. The Eleventh Circuit found that even though the Store Manager was the highest official within the store, he was not high enough up Wal-Mart's corporate hierarchy to impute liability to the company and vacated the punitive damage award in its entirety. The Court found important the fact that Wal-Mart had a policy for making complaints of discrimination vacated the punitive award because there was no evidence that she ever complained to the District Manager (the Store Manager's immediate supervisor) or anyone else that her demotion was discriminatory.

The Supreme Court cited *Dudley* with approval in the *Kolstad* opinion. *Kolstad*, 527 U.S. at 540. Further, the Eleventh Circuit has continued to apply the

9

holding in *Dudley* after the issuance of *Kolstad. See Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1279 (11th Cir. 2002); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1280 (11th Cir. 2008).

In *Miller*, issued three (3) years after *Kolstad*, the Eleventh Circuit applied the holdings of both *Dudley* and *Kolstad.* The Court concluded that its facts were distinguishable from *Dudley*:

> In *Dudley v. Wal-Mart Stores, Inc*., we held that actual notice of racial discrimination to two Wal-Mart store managers could not serve as notice to the corporation because they were not sufficiently high up the corporate ladder... Kenworth is not similarly situated to the defendant in *Dudley* to justify the application of that holding to the present facts. Rather than a corporate giant where employees are separated from higher management by many intermediate-level managers, Brooks was separated from Mitchell, president and owner of Kenworth, by only one person . . .

*Miller*, 277 F.3d at 1279.

Therefore, it is clear from the holding of the Eleventh Circuit in *Dudley* and the Supreme Court in *Kolstad* that plaintiff cannot recover punitive damages against a large corporation, such as Magic Burgers, unless she provides notice to the company that she feels she is being harassed so the company has an opportunity to redress the situation. It is undisputed that once Merard made her complaint, Magic Burgers took prompt and effective action and therefore cannot be said to have ratified either Rivera's or Burris' alleged conduct.

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that they have conferred with Plaintiff's counsel prior to the filing of this motion and Plaintiff objects to same.

WHEREFORE, Defendant Magic Burgers moves that it be granted judgment as a matter of law pursuant to Rule 50(a), FRCP, and that all punitive damages claims of Plaintiff, Ashley Merard, be dismissed with prejudice.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via CM/ECF or email to: Mary E. Lytle Esq., Lytle & Barszcz, 533 Versailles Drive, 2nd Floor, Maitland, Florida 32751 at mlytle@lblaw.attorney on this 1st day of June, 2021.

*KAUFMAN, DOLOWICH & VOLUCK, LLP*

**/s/ Christopher E. Brown**
**ABBYE E. ALEXANDER, ESQUIRE**
Florida Bar No.: 662348
**CHRISTOHER E. BROWN, ESQUIRE**
Florida Bar No.: 71568
**JESSE D. DRAWAS, ESQUIRE**
Florida Bar No. 68654
orlandopleadings@kdvlaw.com
301 E Pine Street, Suite 840
Orlando, Florida 32801
Tel: (407) 789-0244 /Fax: (888) 502-6353
Attorneys for Defendant